Richard ZEID and Siom Misrahi, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

John A. KIMBERLEY, Frank M. Richardson, Mark A. Rowlinson, and Firefox Communications, Inc., Defendants.

Civil No. 96–20136 SW.

United States District Court, N.D. California.

May 6, 1997.

William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Richard Bemporad, Lowey Dannenberg Bemporad & Selinger, P.C., White Plains, NY, for Richard Zeid.

William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, for Siom Misrahi.

Shirli Fabbri Weiss, Gray cary Ware & Freidenrich, San Diego, CA, for John A. Kimberley, Frank M. Richardson, Mark A. Rowlinson, Firefox Comm.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND

SPENCER WILLIAMS, District Judge.

Plaintiffs Richard Zeid and Siom Misrahi, on behalf of themselves and others similarly situated, initiated this class action against John A. Kimberley, Frank M. Richardson, Mark A. Rowlinson and Firefox Communications, Inc. alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Securities Act"), 15 U.S.C. § 78j(b) and § 78t(a), and SEC Rule 10(b)(5). Defendants responded by filing a motion to dismiss which this Court granted, with leave to amend, on June 6, 1996.

Plaintiffs then filed a First Amended Complaint ("FAC"). Now, Defendants move to dismiss the FAC pursuant to section 21D(b)(3)(A) of the Securities Act, 15 U.S.C. § 78u–4(b)(3)(A), and Fed. R. Civ. P. 9(b) and 12(b)(6), asserting that Plaintiffs have failed to plead sufficient facts to support their claims for relief. After careful consideration of the materials submitted and arguments of counsel, the Court GRANTS Defendants' motion to dismiss Plaintiffs' First Amended Complaint without leave to amend.

## I. BACKGROUND

Defendant Firefox Communications, Inc. (Firefox), an English Corporation, develops, markets and supports software that allows users of local area networks to communicate with users on other networks, including the Internet. Defendants Kimberley, Richardson, and Rowlinson are officers and directors of Firefox. Plaintiffs Richard Zeid and Siom Misrahi are individual investors who purchased Firefox stock between July 20, 1995 and January 2, 1996.

In 1994, Firefox decided to significantly expand its sales and marketing efforts in the United States and United Kingdom. Firefox

also decided to conduct a public offering to generate the necessary capital to accomplish the planned expansion. On May 15, 1995, Firefox went public, selling 2.3 million shares at $18 a share. That day, Firefox's stock rose to $29½. The stock reached $30 per share by late May but then declined to $21¾ per share by July 19. On July 20, Firefox released its results for the quarter ended June 30, 1995. Despite positive results, Firefox's stock continued to slide, falling to $17 per share by August 3. From September 1995 to January 2, 1996, Firefox's stock fluctuated between $17½ to $28⅝ per share. On January 3, 1996, when Firefox announced that it expected a loss for its fourth quarter its stock plummeted from $22⅝ to 10¼. On January 17, 1996, Firefox and FTP Software Inc. announced plans of a merger that the parties completed in July of 1996.

In February 1996, Plaintiffs initiated this action pursuant to Fed. R. Civ. P. 23(a) and (b)(3), alleging that during the period of July 20, 1995 to January 2, 1996 (the "Class Period"), Defendants conducted a fraudulent scheme and course of business to inflate the value of Firefox's stock. Specifically, the FAC provides that Defendants, through analysts' reports, press releases and financial statements, misrepresented to the investment community that it was enjoying strong demand for its products and a successful expansion of its sales and marketing program in the U.S. Further, Plaintiffs claim that Defendants prematurely recognized revenue and recorded "phony" sales in order to distort Firefox's profits. According to the FAC, Defendants engaged in this fraudulent activity to avoid a potential lawsuit and to assist in arranging and finalizing the sale of Firefox for over $150 million, which would have netted corporate insiders over $50 million.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6) Standard

A complaint should only be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure where it appears beyond doubt that no set of facts could support plaintiff's claim for relief. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80

(1957); *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.1987), *cert. denied,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533–34 (9th Cir.1984). In reviewing a motion under Rule 12(b)(6), all allegations of material fact are taken as true and must be construed in the light most favorable to the nonmoving party. *Durning,* 815 F.2d at 1267. However, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re VeriFone Sec. Litig.,* 11 F.3d 865, 868 (9th Cir.1993).

### B. Section 10(b) Claims

Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, makes it unlawful to use in connection with "the mails or facilities of interstate commerce" any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe...." Rule 10b–5 promulgated under section 10(b) provides as follows:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,
>
> (a) to employ any device, scheme, or artifice to defraud,
>
> (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5 (1993).

The elements of a § 10(b) claim are: 1) a false statement or an omission that rendered another statement misleading; 2)

materiality; 3) scienter; 4) loss causation; and 5) damages. *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir.1989), *cert. denied*, 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990).

## C. Pleading Standards

■ Complaints alleging fraud must meet the heightened pleading standards of Fed. R. Civ. P. 9(b), which requires that "in all averments of fraud or mistake the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy this particularity requirement, a complaint must "state precisely the time, place, and the nature of the misleading statements, misrepresentations, and specific acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994), *cert. denied*, —— U.S. ——, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995).

Recently, Congress addressed Rule 9(b) and the pleading standards for fraud as applied in the context of securities class action lawsuits. As part of an effort to discourage the filing of abusive lawsuits, Congress established uniform and stringent pleading requirements for private actions filed under the federal securities laws. S.Rep. No. 98, 104th Cong., 1st Sess. 15 (1995) U.S.Code Cong. & Admin.News 1995 pp. 674, 694; H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 41 (1995). The Reform Act requires that plaintiffs asserting claims for securities fraud specify each false or misleading statement and why each statement is false or misleading. 15 U.S.C. § 78u–4(b)(1). If an allegation regarding a statement or omission is made on information and belief, the complaint must state with particularity the facts on which the belief is formed. *Id.* Additionally, with respect to each act or omission, plaintiffs must set forth in the complaint particular facts that give rise to a strong inference that defendant acted with the required state of mind. 15 U.S.C. § 78u–4(b)(2). A complaint that fails to comply with any of these requirements must be dismissed. 15 U.S.C. § 78u–4 (b)(3)(A).

## III. DISCUSSION

Defendants contend that the claims asserted in the FAC fail because they consist of mere conclusory allegations which lack the specificity required by the Reform Act. Defendants also argue that Plaintiffs rely heavily on allegations based on information and belief but fail to state with particularity the factual allegations that form the basis for their beliefs.

In response, Plaintiffs contend that the Reform Act and its pleading requirements do not apply to their claims. They also assert that even if the Reform Act applies, they have sufficiently alleged in the FAC each false or misleading statement, why each statement was false or misleading, and facts giving rise to a strong inference that Defendants acted with the required state of mind.

## A. Preliminary Matters

Before assessing the sufficiency of the allegations in the FAC, the Court must examine three preliminary matters: (1) whether the Reform Act applies to claims based on pre-act conduct that are filed after the Reform Act's effective date; (2) whether the requirements of the Reform Act for allegations made on information and belief apply to Plaintiffs' claims; and (3) how to interpret the Reform Act's pleading standard for scienter.

### 1.) Application of the Reform Act

■ Plaintiffs argue that the Reform Act does not apply retroactively to conduct occurring before its effective date, December 22, 1995, and thus, it should not apply to their case since most of the allegedly improper conduct committed by Defendants occurred before December 22, 1995. However, Plaintiffs misinterpret the language of the Reform Act, which provides in pertinent part:

> The amendments made by this title shall not affect or apply to actions under title I of the Securities Exchange Act of 1934 or title I of the Securities Act of 1933, commenced before and pending on the date of enactment of this act.

Reform Act § 108, Pub.L. No. 104–67, 109 Stat. at 758 (1995).

This language means exactly what it says. The amendments contained in the Reform Act do not apply retroactively to *pending actions.* Rather, they apply prospectively, to

*all actions* brought under title I of the Securities Exchange Act of 1934 or title I of the Securities Act of 1933, that are *commenced after* December 22, 1995. Since Plaintiffs filed their action on February 23, 1996, two months after the effective date, the Reform Act applies to their suit.

### 2.) *Allegations Made on Information and Belief*

■ Defendants assert that the FAC contains numerous allegations that are implicitly based on information and belief because, due to the nature of the allegations, they cannot be based on either Plaintiffs' or their counsels' personal knowledge. Further, Defendants contend that the FAC does not comply with the Reform Act because it fails to state with particularity all the facts on which these "beliefs" are formed.

Prior to the Reform Act, courts permitted plaintiffs asserting fraud to make allegations based on information and belief as to matters peculiarly within the defendant's knowledge. *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993). Further, since plaintiffs could not be expected to have knowledge of such matters, courts relaxed the pleading requirements of Rule 9(b) when assessing the sufficiency of these allegations. *Id.* However, to warrant application of a relaxed standard, plaintiffs were required to state the facts that formed the basis for their allegations made on information and belief. *Id.*

As part of the pleading requirements established by the Reform Act, Congress codified the rule for pleading on information and belief. The Reform Act provides that "if an allegation regarding the statement is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Thus, under the Reform Act, plaintiffs may continue to make allegations based on information and belief so long as the complaint at issue sets forth the facts that form the basis of the allegations.

Here, the FAC does not state that any allegations are based on "information and belief" but rather, it asserts that Plaintiffs obtained the facts through "investigation of counsel." FAC ¶ 123. In other words, even though some of the facts appear to be peculiarly within Defendants' knowledge, Plaintiffs contend that they have, through investigation, acquired sufficient facts to state a claim for fraud without relying on allegations made on information and belief.

As such, Plaintiffs need not state with particularity all facts on which their beliefs are formed. However, since Plaintiffs' allegations are not based on information and belief, they must meet the strict, rather than relaxed, pleading requirements of Rule 9(b) and the Reform Act. Accordingly, Plaintiffs cannot rely on conclusory allegations or tenuous inferences but instead, must allege with particularity: (1) each statement, (2) why each statement is false, and (3) as to each statement, facts giving rise to a strong inference that Defendants acted with scienter.

### 3.) *Pleading Scienter* [1]

Scienter is a necessary element of every 10–b(5) claim. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1380, 47 L.Ed.2d 668 (1976). The Supreme Court has defined scienter as "a mental state embracing intent to deceive, manipulate or defraud." *Id.* at 194 n. 12, 96 S.Ct. at 1381 n. 12.

Prior to enactment of the Reform Act, the Ninth Circuit permitted plaintiffs to aver scienter generally. *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1545–47 (9th Cir.1994). Congress then amended the standard for pleading scienter in all circuits by including a provision in the Reform Act which states: "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). This "strong inference" language was modeled upon the pleading standard of the Second Circuit. H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 41 (1995).

---

1. In adjudicating Defendants' initial motion to dismiss, this Court applied the Second Circuit's test for pleading scienter, which both parties relied on in their motion papers. Now, in light of the recent cases and swelling debate on the subject, the Court finds it necessary to provide a more detailed discussion regarding the interpretation of the "strong inference" standard.

In the Second Circuit, to adequately plead scienter, the facts alleged in a complaint must "give rise to a 'strong inference' of fraudulent intent." *O'Brien v. National Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir.1991). In applying this standard, the Second Circuit recognizes two distinct ways in which a plaintiff may plead scienter without having direct knowledge of the defendant's intent. *In re Time Warner Inc. Securities Litigation*, 9 F.3d 259, 268–69 (2d Cir.1993). First, the plaintiff can allege facts "establishing a motive to commit fraud and an opportunity to do so." *Id.* at 269. Second, the plaintiff can allege "facts constituting circumstantial evidence of either reckless or conscious behavior." *Id.*

Even though the Reform Act makes use of the "strong inference" language, the statute's legislative history creates some uncertainty as to whether Congress intended to adopt all, some or none of the Second Circuit case law interpreting the standard. The Senate Committee on Banking, Housing and Urban Affairs stated in its report on the initial bill, S. 240:

> The Committee does not adopt a new and untested pleading standard that would generate additional litigation. Instead, the Committee chose a uniform standard modeled upon the pleading standard of the Second Circuit. Regarded as the most stringent pleading standard, the Second Circuit requires that the plaintiff plead facts giving rise to a "strong inference" of defendant's fraudulent intent. The Committee does not intend to codify the Second Circuit's caselaw interpreting this pleading standard, although courts may find this body of law instructive.

S.Rep. No. 98, 104th Cong., 1st Sess. 15 (1995) U.S.Code Cong. & Admin.News 1995 pp. 674, 694.

While the bill was in the Senate, Senator Arlen Specter tried to clarify the standard by proposing to codify the two-part test used by the Second Circuit. The Senate initially adopted Specter's proposal, but the Conference Committee dropped the amendment from its version of the bill. In its report, the Conference Committee offered a cursory explanation for not codifying the Second Circuit's case law:

> Because the Conference Committee intends to strengthen existing pleading requirements, it does not intend to codify the Second Circuit's case law interpreting this pleading standard.

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 41 (1995). In a footnote to the Conference Report, the Committee also stated that language relating to motive, opportunity, or recklessness was intentionally excluded from Reform Act. *Id.* at n. 23.

The President then vetoed the bill, partially out of concern that Congress intended to raise the pleading standard beyond the Second Circuit standard. H.R.Doc. No. 150, 104th Cong., 1st Sess. 240 (1995). In Congressional hearings following the President's veto, Senator Christopher Dodd, a co-sponsor of the legislation and a member of the Conference Committee, asserted that the President's concern regarding the standard for scienter was unwarranted. 141 Cong. Rec. § 19067–68 (1995). He explained that the Committee eliminated the Specter amendment language because it was "an incomplete and inaccurate codification" of Second Circuit case law. *Id.* at § 19067. Further, Dodd stated, "[a]s I read the securities litigation conference report, the pleading standard is faithful to the Second Circuit's test." *Id.* Congress subsequently overrode the President's veto but did not clarify the "strong inference" standard or whether the standard was intended to be higher than the one used by the Second Circuit.

The Reform Act's equivocal legislative history has predictably spawned inconsistent interpretations of the pleading standard for scienter. In fact, two trial courts in this circuit, *In re Silicon Graphics, Inc. Sec. Litig.*, 1996 WL 664639 (N.D.Cal.1996) and *Marksman Partners, L.P. v. Chantal Pharmaceutical*, 927 F.Supp. 1297 (C.D.Cal.1996), have analyzed the issue and reached different results.

In *Silicon Graphics*, the court interpreted the Reform Act to eliminate the "motive and opportunity" test and recklessness as a basis for liability. In so doing, the court held that to plead scienter in securities fraud cases,

plaintiffs must, as to each allegedly misleading statement, allege specific facts that constitute circumstantial evidence of conscious behavior. 1996 WL 664639 at *6.

In contrast, the *Chantal* court was unpersuaded by defendants' arguments that Congress eliminated recklessness as a basis for liability and the "motive and opportunity" test. 927 F.Supp. at 1309 n. 9, 1310–12. Accordingly, the court applied the Second Circuit's two-prong inquiry allowing allegations of either "motive and an opportunity" or "conscious behavior or recklessness." *Id.* at 1310.

Despite the divergent conclusions in *Silicon Graphics* and *Chantal*, both cases find support in the statute's legislative history. *Silicon Graphics* makes use of the language of the Conference Committee Report, while *Chantal* relies on the report from the Senate Committee on Banking, Housing and Urban Affairs. The fact that these two courts, in well-reasoned opinions, provide different assessments of Congress's intent illustrates the inherent ambiguity of the legislative record. Further, this Court's own review of the Reform Act's legislative course confirms that Congress did not provide any clear answers for interpreting the "strong inference" standard.

Therefore, the answers must be deduced from the text of the statute itself. The fact that Congress modeled the standard after the Second Circuit's, making use of the "strong inference" language, demonstrates some approval of the Second Circuit's case law interpreting the pleading standard for scienter. Additionally, the failure to provide an alternative interpretation militates against completely dispensing with the Second Circuit's well-developed two-part inquiry.

However, because Congress chose not to codify the case law, courts have significant leeway when interpreting the "strong inference" standard. Thus, while the Second Circuit case law provides guidance for interpreting the "strong inference" standard, courts can and should modify, or in some instances, reject, any case law that is inconsistent with the letter or spirit of the Reform Act. Ac-

cordingly, application of the Second Circuit's two-part inquiry is appropriate so long as any inconsistencies with the Reform Act are eliminated.

This Court has discovered two such inconsistencies. In applying the "strong inference" standard, the Second Circuit has stated that scienter need not be pled with "great specificity" and that plaintiffs need only provide a "minimal factual basis for their conclusory allegations of scienter." *Connecticut Nat. Bank v. Fluor Corp.,* 808 F.2d 957 (2d Cir.1987). These statements were made in light of the language of Rule 9(b) which provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."

In contrast, the Reform Act states that plaintiffs must "state *with particularity* facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2) (emphasis added). Further, when Congress adopted the uniform pleading standard it sought to strengthen the requirements of Rule 9(b), which, at the time, was not preventing "abuse of the securities laws by private litigants." H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 41 (1995). Thus, it is clear that under the Reform Act, allegations of scienter cannot be averred generally, but rather, they must be made "with particularity" and a "minimal factual basis" will not suffice.

Additionally, the Second Circuit permits plaintiffs to allege facts of either recklessness or conscious behavior for all allegedly misleading statements, whether they are forward-looking or not. *In re Time Warner,* 9 F.3d at 268–69. Under the Reform Act, circumstantial evidence of recklessness is not sufficient to impose liability for allegations of false or misleading "forwarding-looking statements." Actual knowledge of falsity is required to impose liability for such statements. 15 U.S.C. § 77z–2.[2] Therefore, when a complaint alleges false forward-looking statements, it must set forth specific facts demonstrating that, as to each of these

---

**2.** The Reform Act also provides that joint and several liability may be imposed only on a person

who "knowingly committed" a violation of the securities laws. 15 U.S.C. § 78u–4(g)(2).

**918**

statements, the defendant consciously misled the public.

■ In sum, to adequately plead scienter under the Reform Act, for each false or misleading statement that is not forward-looking, a plaintiff must allege: (1) specific facts demonstrating that the defendant had a motive and an opportunity to commit fraud; or (2) specific facts constituting circumstantial evidence of conscious behavior or recklessness. As for forwarding-looking statements, a plaintiff must allege specific facts demonstrating either: (1) a motive and an opportunity to defraud; or (2) circumstantial evidence of conscious behavior. Further, allegations of scienter must be based on a substantial factual basis in order to create a "strong inference" that the defendant acted with the required state of mind.

### B. The FAC's Allegations of False and Misleading Statements

Now, the Court turns to the allegations asserted in this case. Unfortunately, identifying Plaintiffs' allegations requires an arduous expedition through a rambling, repetitive, and unwieldy pleading. The FAC, which is 104 pages in length, begins with a 25-page "Summary of Action." This long-winded introduction is hardly a "summary" and serves only to repeat, rather than summarize, most of the allegations contained in the body of the pleading and to add a few charts that evidently did not squeeze into the remaining 79 pages.

The FAC also includes a "Background to the Class Period" section that provides Plaintiffs' version of what was going at Firefox and what Firefox insiders knew prior to the Class Period. This section makes broad assumptions without providing factual support and contains several irrelevant allegations, such as a reference to an unrelated securities

fraud lawsuit involving Defendant Richardson.

Reaching the core of Plaintiffs' allegations provides little relief to the beleaguered reader. The FAC sets forth Plaintiffs' allegations of false and misleading statements made during the Class Period in an unduly cumbersome, puzzle-like manner. *See In re GlenFed,* 42 F.3d at 1553–54; *Strassman v. Fresh Choice, Inc.,* 1995 WL 743728, *4 (N.D.Cal.1995).* Rather than identifying each misleading statement followed by specific reasons why each statement was false, Plaintiffs organize the FAC by periods of time, lumping together into groups several allegedly misleading statements and following each group with a laundry list of "adverse facts" known to insiders at that time. This method of pleading imposes an unnecessary burden on Defendants and the Court to sort out the alleged misrepresentations and match them with the corresponding "adverse facts." Additionally, this litigation tactic affronts Fed. R. Civ. P. 8, which requires a "short and plain statement of the claim."

However, despite the poor draftsmanship, the Court has foraged through the FAC to find the allegations that form the basis of Plaintiffs' claims. For purposes of analyzing the sufficiency of these claims, Plaintiffs' allegations can be divided into three general categories: (1) false and misleading analyst reports, (2) false and misleading company statements, and (3) false financial statements.

#### 1.) *False and Misleading Analyst Reports*

■ Plaintiffs assert that during the Class Period,[3] Firefox insiders gave analysts misleading information to conceal their own misconduct and to inflate the value of Firefox's stock. Specifically, Plaintiffs allege that on July 21, August 3, August 22, September 20, October 24, and December 11 of 1995, Firefox's top executives (Kimberley, Richardson

**3.** The FAC also references two analysts' reports that were issued prior to the Class Period, the Robertson Stephens May 31, 1995 report and the Cowen June 2, 1995 report. FAC ¶¶ 56, 57. Plaintiffs assert that these statements were "part of the total mix of information affecting Firefox's stock price on July 20, 1995." FAC ¶ 64. However, the FAC does not rely on these reports as a basis for liability. In setting forth their claims for relief, Plaintiffs seek to recover for false statements disseminated *during the Class Period.* FAC ¶ 117. Further, in regard to the pre-Class Period reports, Plaintiffs do not allege: (1) when Defendants gave the false information contained in these reports; (2) that the statements were false when made; or (3) that Defendants were aware the statements were false when they were disseminated to the market. Therefore, the allegations regarding these reports are not sufficient to support a claim for fraud.

and Rowlinson) communicated with analysts from Robertson Stephens & Co., Cowen & Co., and Montgomery Securities and told them false and deceptive information. FAC ¶¶ 65, 70, 71, 73, 80, 82. According to the FAC, the analysts then transmitted this false and deceptive information to the market in reports issued on July 21, August 4, August 23, September 20, October 25, October 26, October 27 and December 11 of 1995. FAC ¶¶ 65, 70, 71, 73, 80, 82. Further, Plaintiffs allege that before the August 4 and August 23 reports were issued, Richardson and Rowlinson approved the reports after reviewing drafts and assured the analysts that the reports were correct. FAC ¶¶ 70, 71.

The Court finds, as it did in assessing the original complaint, that Plaintiffs' allegations of misleading statements contained in analysts' reports are insufficient to support a claim for securities fraud. As stated in this Court's June 6, 1996 Order, for Defendants to be liable they must have either expressly or impliedly adopted or endorsed the analysts' statements. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 934 (9th Cir.1996). To properly plead adoption, Plaintiffs must allege specific facts showing that: (1) an insider provided misleading information to an analyst, (2) the analyst relied on this information in preparing a report, and (3) the insider somehow endorsed or approved the report prior to or after its publication. *In re Syntex Corp. Securities Litigation*, 855 F.Supp. 1086, 1097 (N.D.Cal.1994) *affirmed*, 95 F.3d 922 (9th Cir.1996).

In the FAC, Plaintiffs allege that Richardson and Rowlinson provided misleading information to the analysts and the analysts relied on this information in forming their reports. Plaintiffs further allege that Richardson and Rowlinson reviewed and approved drafts of the August 3 and August 23 reports prior to their release. FAC ¶¶ 70, 71. However, the FAC does not include any allegations of adoption or approval by Defendants in regard to the July 21, September 20, October

25, October 26, October 27 and December 11 analysts' reports. Thus, the statements and forecasts contained in these reports cannot be attributed to Defendants.[4]

■ The deficiencies in Plaintiffs' claims of misleading analysts' statements are not limited to failure to plead adoption. Several statements in the analysts' reports are inactionable amorphous statements of corporate optimism. Plaintiffs allege that Defendants falsely told analysts that: "After a strong second quarter, the Company *has a good start* on the third quarter"; "Firefox's U.S. sales team had assembled a *large prospect base* with which to support growth throughout 1995 and 1996"; and "The third quarter was *on track.*" FAC ¶¶ 70, 71. While projections and general statements of optimism may trigger liability in some cases, *In re Apple Computer Sec. Litig.*, 886 F.2d at 1113, vague or amorphous statements cannot serve as a basis for liability. *Raab v. General Physics Corp.*, 4 F.3d 286, 288–90 (4th Cir. 1993); *In re Syntex Corp.*, 855 F.Supp. at 1095; *Strassman*, 1995 WL 743728 at *5. Such statements are inactionable because reasonable investors do not consider "soft" statements or loose predictions important in making investment decisions. *Raab*, 4 F.3d at 289–90.

Here, statements that Firefox had a "good start" and was "on track" for the third quarter and was assembling "a large prospect base" to support growth in 1995 and 1996 are too vague and amorphous to be material. As the court found in *Raab*, no reasonable investor would rely on such vague statements, "and they are certainly not specific enough to perpetrate fraud on the market." *Id.* at 290.

Additionally, some of the allegedly false statements asserted in the FAC cannot be found in the analysts' reports. Plaintiffs allege that Defendants conveyed to the market through analysts that Firefox's direct sales team in the U.S. was "functioning well" and things were "going fine with Firefox's busi-

4. Since the alleged misstatements in these reports cannot be attributed to Defendants, the remainder of the analysis focuses on the allegedly misleading statements in the August 3 and August 23 reports. The Court notes, however, that the allegations of misleading statements in the July 21, September 20, October 25, October 26, October 27 and December 11 analysts' reports, are plagued by the same defects as those found in the allegations concerning the August 3 and August 23 reports.

# 920

ness, especially in the U.S." FAC ¶¶ 70, 71. However, these statements do not appear in the reports released to the marketplace. *See* August 3, 1995 Robertson Stephens Report; August 23, 1995 Cowen Report.[5] As such, the statements, if they were made, never reached the market and therefore, are not actionable.

The FAC also erroneously attributes several opinions of the analysts to the Defendants. For example, Plaintiffs assert that Defendants told analysts that investors' concerns over Firefox were misplaced and that Firefox was increasingly confident it would meet its predicted earnings. FAC ¶¶ 70, 71. The reports, however, clearly provide that the *analysts* believed investors' concerns were misplaced and that the *analysts* were more confident about *their own* estimates and market outlook. Thus, it is improper for Plaintiffs to use these opinions as a basis for liability against Defendants.

Lastly, Plaintiffs fail to state with particularity why each statement was false when made or allege facts demonstrating that the predictions and forecasts in the analysts' reports lacked a reasonable basis. To adequately allege fraud, a plaintiff must set forth an explanation as to why the disputed statements were false or misleading when made. *GlenFed*, 42 F.3d at 1549. "This can be done most directly by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to defendants." *Id.*

Plaintiffs allege that Firefox insiders knew of and failed to disclose several "adverse facts." FAC ¶ 74. These "adverse facts" include allegations that: Firefox's sales and marketing expansion plan was failing, the sales force was performing very poorly, demand for Firefox's products was

weak, Firefox was experiencing difficulties in developing new products, Firefox was shipping untested products, and Firefox was not making progress in the "important" educational market. FAC ¶ 74.

The "adverse facts" listed in the FAC are conclusory in the extreme and do not provide an adequate explanation of why the statements were false when made. None of Plaintiffs' general allegations are supported by references to inconsistent contemporaneous statements or information made by or available to Defendants. Instead, Plaintiffs try to bolster their conclusions with additional unfounded allegations. For example, Plaintiffs assert that Firefox was failing because it was mismanaged, lacked adequate personnel, did not sell "any significant amount" of its NOV*IX product and that it was performing very poorly because its "sales executives were incompetent" and its "sales efforts were in disarray." Plaintiffs do not, however, provide any examples of mismanagement and the only attempt to support their assertions of incompetence is a reference to one salesman who allegedly did not close a sale during his eight month employment with Firefox. FAC ¶ 69. Additionally, Plaintiffs do not quantify the allegedly poor sales or reference any reports or other information to show that Firefox's sales staff was performing badly or was in "disarray."

In fact, the only reference to supporting information is a general allegation that Defendants had access to "internal corporate information." FAC ¶¶ 67, 74. However, without any reference to particular corporate documents or other information, the Court can only conclude that Plaintiffs' allegations are based purely on speculation and conclusions drawn from hindsight.[6]

---

**5.** Ordinarily, courts are limited to the allegations in the complaint when considering a motion to dismiss. Fed. R. Civ. P. 12(b)(6). However, courts may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994). Here, the Court reviewed copies of analysts' reports alleged in the FAC submitted by both Plaintiffs and Defendants.

**6.** Further, Plaintiffs cannot argue that they should not be required to plead their allegations with particularity on the grounds that they have not had an opportunity to conduct discovery or that the documents are peculiarly within Defendants' knowledge. As set forth in section III A(2) of this Order, because Plaintiffs allegations are not based on information and belief, the Court will not relax the requirements of Rule 9(b).

In sum, Plaintiffs' rely on inactionable statements and conclusory allegations to support their claims of misleading analysts' reports and forecasts. Therefore, the claims fail to meet the pleading requirements of Rule 9(b) and the Reform Act.

### 2) *False and Misleading Company Statements*

In the FAC, Plaintiffs allege that on four occasions during the Class Period Firefox executives released false and misleading statements directly to the market. First, Plaintiffs assert that on July 20, 1995, Defendants issued a press release reporting strong second quarter results [7] and stating that the results "reflected increased market acceptance of server-centric solutions." FAC ¶ 65. In alleging fraud based on this statement, Plaintiffs fail to explain why the statement was false when made. Rather than referencing contemporaneous facts, Plaintiffs rely on conclusory allegations that the expansion plan was failing and demand for Firefox's product was weak. FAC ¶ 67(e) & (g). Such broad assertions fail to support the conclusion that, at the time the statement was made, Firefox was not experiencing increased market acceptance of its server-centric solutions.

Second, Plaintiffs allege that on September 20, 1995 at the Montgomery Securities 25th Annual Investment Conference, Firefox executives allegedly told assembled brokers, analysts and institutional investors that Firefox was performing very well, was on track for strong third an fourth quarter earnings, and its competitive position was improving. FAC ¶ 73. These allegations are insufficient for two reasons. Statements that Firefox was "on track" and "its competitive position was improving" are too vague to support a claim for fraud. Additionally, Plaintiffs fail to state with particularity why each statement was false when made.

Third, Plaintiffs allege that Defendants issued a press release on October 24, 1995, reporting strong increases in revenue and earnings due to "continued expansion" and "significantly increased market acceptance." FAC ¶ 80. These allegations are also insuffi-

cient. Once again, the FAC is devoid of any reference to any internal documents or other information that would support allegations that Firefox's expansion was failing or demand for its products was weak.

Fourth, Plaintiffs allege that on December 11, 1995, Firefox executives appeared at the 13th Annual Montgomery Technology Conference and told brokers, analysts and institutional investors that: (1) business was strong and demand for NOV*IX was high; (2) Firefox's core business products were selling well, enabling Firefox to increase prices; and (3) Firefox's account receivables would decline to $5–$5.5 million in the fourth quarter. FAC ¶ 82. In regard to the first two statements, Plaintiffs allege that Firefox's business was, in fact, not strong and its products were not selling well. FAC ¶ 83(e). To support these broad assertions, Plaintiffs assert that Firefox's expansion was failing due to mismanagement and inadequate personnel and that Firefox was unable to sell "nearly as much of its NOV*IX product" as necessary to meet its internal budgets, company forecasts or public forecasts. FAC ¶ 83(e).

As previously stated, these general allegations of poor performance do not meet the particularity requirements of Rule 9(b) and the Reform Act. The FAC does not point to or allege facts or documents that would corroborate the assertion that Firefox was failing due to "mismanagement" or "inadequate personnel." Further, the FAC does not identify Firefox's actual sales or any internal or public forecasts to support the assertion that Firefox was falling significantly below projections.

In regard to the prediction of declining accounts receivable, Plaintiffs do not even allege any general "adverse facts," let alone specific contemporaneous facts, to show that the statement was made without a reasonable basis. In fact, according to financial figures in the FAC, Firefox's accounts receivable did decline, eventually falling to $5.7 million for the quarter ending March 31, 1996. FAC ¶ 113.

---

7. The allegations of fraudulent financial state- ments are analyzed below.

In conclusion, the FAC's allegations of false and misleading company statements do not meet the requirements of Rule 9(b) and the Reform Act because the FAC does not specify the reason or reasons why any of the company statements were false and misleading when made. As set forth above, Plaintiffs' broad and conclusory allegations of declining sales and product demand, which are not supported by any references to contemporaneous facts, do not provide a sufficient basis to support a claim of fraud on the marketplace.

### 3.) *Fraudulent Financial Statements*

In the FAC, Plaintiffs allege that Defendants materially overstated Firefox's revenue and earnings for the second and third quarters of 1995 by improperly recognizing sales and by failing to keep adequate reserves. FAC ¶¶ 93, 94, 96, 97, 98. Plaintiffs contend that Firefox improperly booked sales and recorded revenues for transactions: (1) where the products were delivered much later, (2) where no purchase orders were signed or authorized, (3) where the customers were assured they did not have to pay if the products were not resold, and (4) where resellers signed purchase orders but were assured by Firefox that they could rescind the order later if they wanted to. FAC ¶ 93, 96. According to the FAC, Defendants recorded sales to GBC/Vitek, TechData and Access Graphics after telling these customers that they could return the products if they were unable to resell them. FAC ¶ 93, 96. Plaintiffs also contend that Defendants recorded sales on non-binding purchase orders executed with ISYX, STMS, and "Manny," a product reseller who was a friend of a Firefox employee. FAC ¶¶ 93, 94, 96, 97. Lastly, the FAC includes allegations that Defendants artificially inflated Firefox revenues because they did not adequately reserve for returns and doubtful accounts receivable. FAC ¶¶ 93, 94, 97, 98.

To adequately state a claim for accounting fraud, a plaintiff must plead facts sufficient to support a conclusion that the defendants prepared fraudulent financial statements and that the alleged financial fraud was material. *In re Ross Systems Sec. Litig.*, [Current Tr. Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,363 at 90,498, 1994 WL 583114 (N.D.Cal.1994). Although the complaint need not specify the exact dollar amount of each error, it must identify particular transactions underlying the defendants' alleged accounting deficiencies. *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 926–27 (9th Cir.1993), *cert. denied sub nom., Wells Fargo & Co. v. Greenwald*, 513 U.S. 917, 115 S.Ct. 295, 130 L.Ed.2d 209 (1994); *In re Ross Systems Sec. Litig.*, Fed. Sec. L. Rep. ¶ 98,-363 at 90,499.

In their original complaint, Plaintiffs did not identify any transactions where Firefox improperly recorded revenue. The Court pointed out this deficiency in its Order dismissing the original complaint with leave to amend. In the FAC, Plaintiffs provide more particularity as to some of their assertions of premature revenue recognition but fail to do so for others.

Plaintiffs still fail to identify any transactions where Firefox recorded sales well before shipping the products or where Firefox recorded sales without receiving purchase orders. The FAC generally asserts such transactions took place (FAC ¶ 93, 96), but does not specify a single transaction involving delayed shipping or unauthorized delivery. Thus, the allegations of accounting fraud based on these transactions are clearly insufficient.

As for Plaintiffs' other assertions of improper revenue recognition, the FAC identifies customers who were allegedly told they could return the products if they were not resold as well as resellers who allegedly received products with the right to rescind the purchase orders. FAC ¶ 93, 94, 96, 97. The FAC also includes general allegations concerning the amount of "improper" sales. Plaintiffs allege that in the second quarter of 1995, GBC/Vitek and Tech/Data accepted over $750,000 worth of shipments where they "were told" they did not have to pay if they did not resell the products. FAC ¶ 93. Plaintiffs also allege that, during the same quarter, Firefox generated fictitious business orders with "Manny" for $200,000–$300,000 worth of merchandise. FAC ¶ 93. As for the third quarter of 1995, Plaintiffs contend that the transactions with GBC/Vitek, Tech/Data and Access Graphics totaled over $1

million and transactions with GBC/Vitek, Tech/Data, Access Graphics, ISYX, STMS and "Manny" accounted for at least $1.6 million of Firefox's sales. FAC ¶ 96 & 97.

Although these allegations are more specific than those contained in the original complaint, they still do not provide a sufficient basis to support claims of accounting fraud. Simply listing customers and providing general, unsupported estimates of "improper" sales does not meet the particularity requirements of Rule 9(b) and the Reform Act. Rather, Plaintiffs must allege facts regarding the underlying transactions with particularity.

For example, the FAC does not allege who at Firefox told GBC/Vitek, Tech/Data and Access Graphics they could return the products if they were not resold, when transactions occurred, the amount of any particular transaction, or whether any of the products were returned. Additionally, the FAC does not include any specific facts regarding the "non-binding purchase orders" with ISYX and STMS, such as when the products were shipped, the terms of the purchase orders, the amount of the shipments or whether ISYX and STMS paid for the products. Lastly, the allegations regarding "Manny" are clouded by a thick fog of ambiguity. The FAC does not specify who "Manny" is, where he is located, when the shipments were sent to him, what the terms of the orders were, or whether he paid for the merchandise or returned it. Thus, Plaintiffs have not pled with particularity any transactions underlying their allegations of improper revenue recognition.

The remaining claim, that Defendants failed to adequately reserve for returns and doubtful accounts, is necessarily tied to Plaintiffs' allegations of improper revenue recognition and "phony" sales. By itself, the claim does not create a strong inference that Defendants acted with "an intent to deceive, manipulate or defraud." *Hochfelder*, 425 U.S. at 194 n. 12, 96 S.Ct. at 1381 n. 12. Further, the FAC does not allege facts to support a conclusion that this alleged accounting deficiency, standing alone, was material. Thus, the allegations of inadequate

reserves also fail to state a claim for accounting fraud.

## C. The FAC's Allegations of Scienter

The Reform Act requires that Plaintiffs state with particularity, for each allegedly misleading statement, "facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). To satisfy this requirement, Plaintiffs must allege either (1) specific facts demonstrating that the defendant had a motive and an opportunity to commit fraud; or (2) specific facts constituting circumstantial evidence of conscious behavior or recklessness if the statement is not forward-looking.

### 1.) *Motive and Opportunity*

 To satisfy the scienter requirement by this method, Plaintiffs must plead facts demonstrating both a motive and an opportunity to commit fraud. "Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *Shields v. Citytrust Bancorp. Inc.*, 25 F.3d 1124, 1130 (2d Cir.1994). "Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged." *Id.*

 In the FAC, Plaintiffs set forth two motives for Defendants' alleged scheme to defraud the market. First, Plaintiffs assert that Defendants engaged in fraudulent conduct in order to avoid being sued for securities fraud. Second, Plaintiffs contend that Defendants inflated the value of Firefox's stock so that they could complete a sale of Firefox at a higher acquisition price.

The first alleged motive is clearly insufficient to support a "strong inference" of scienter. Anytime a company responds to a decline in its stock price it could be alleged that the company insiders were trying to avoid a lawsuit. Such broad allegations that apply to virtually any company are insufficient to sustain a claim under the securities laws. *In re Crystal Brands Sec. Litig.*, 862 F.Supp. 745, 749 (D.Conn.1994). Moreover, the assertion that Defendants were compelled to commit fraud by the fear of being sued for fraud is absurd. It is hard to see how Defendants would benefit from fighting allegations of

fraud with fraud or by making fraudulent statements to temporarily reverse a stock decline for the purpose of avoiding a lawsuit.

Plaintiffs' second motive and opportunity theory also fails to establish a sufficient basis for inferring Defendants' fraudulent intent. Plaintiffs' assertion that Defendants inflated the value Firefox's stock to obtain a better acquisition price is inconsistent with the series of events that actually occurred. Firefox and FTP announced a proposed merger, which was not completed until July 1996, *after* Firefox released information regarding its loss and its stock price declined.

Recognizing this inconsistency, Plaintiffs contend that Defendants attempted but failed to · finalize a sale before they were forced by a year-end audit to reveal the 1995 fourth quarter loss. According to the FAC, Firefox executives began negotiations with FTP on September 19, 1995 and indicated to FTP that they were seeking a purchase price of $150 million. FAC ¶ 72. Plaintiffs further assert that discussions continued into October and by October 13, 1995, a draft agreement was exchanged and FTP began its due diligence work. FAC ¶ 77. However, between October 18 and 24, FTP broke off negotiations with Firefox. FAC ¶ 78. Plaintiffs assert that Firefox nevertheless continued to deceive the public in hopes of reopening negotiations and "again frantically attempted to complete its acquisition by FTP" in December of 1995. FAC ¶¶ 78, 84.

These allegations fail to demonstrate that Defendants had the means to accomplish a sale or the "likely prospect of achieving concrete benefits." *Shields*, 25 F.3d at 1130. First, the sale of Firefox, as with any sale of a business, involves a due diligence process. In alleging. their motive and opportunity theory, Plaintiffs fail to explain how a year-end audit would reveal "true". information while the due diligence process would not.

Second, Plaintiffs' allegations do not show even a reasonable probability that a sale could be completed before the end of the quarter. In fact, a transaction of this kind would take several months to complete, as evidenced by the fact that the actual merger took over six months to complete. Further, according to the FAC, negotiations started in late September and ended in October shortly after FTP began its due diligence examination. Thus, by Plaintiffs' own account, the negotiations were never close to completion.

In sum, to establish a strong inference of scienter, Plaintiffs rely on the theory that Defendants "committed fraud, they just weren't very good at it." *Thornton v. Micrografx, Inc.*, 878 F.Supp. 931 (N.D.Tex.1995). However, the alleged facts, construed in the light most favorable to Plaintiffs, do not support even a strained and tenuous inference of scienter.

### 2.) *Conscious Misconduct or Recklessness*

■ As an alternative to demonstrating motive and opportunity, Plaintiffs may allege specific facts constituting circumstantial evidence of conscious behavior or facts showing recklessness for statements that are not forward-looking. If this method is used, the strength of the circumstantial allegations must be correspondingly greater. *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Additionally, in the securities fraud context, "recklessness" is conduct "involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir.1990) (en banc), *cert. denied*, 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991).

■ As stated previously, Plaintiffs fail to allege ·contemporaneous facts showing that each allegedly misleading statement was false when made. Thus, there are no specific· facts to create an inference that Defendants knew the statements were false. Also, the allegations of knowledge and recklessness included in the FAC are purely conclusory. Plaintiffs contend that Defendants had access to "internal corporate information" without referencing any particular documents drafted by or available to Defendants that would indicate the statements were false or misleading when made. FAC ¶¶ 67, 74. These

general allegations of "access" to company documents, which could be asserted against any corporate executive, do not constitute specific facts of recklessness or conscious behavior. *See Glickman v. Alexander,* 1996 WL 88570, *14 (S.D.N.Y.1996). Thus, the Court finds that the FAC does not meet the Reform Act's requirement that complaints for securities fraud "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4 (b)(2).

## IV. CONCLUSION

The FAC, while long on words, is short on substance. As with the original complaint, Plaintiffs do not plead their claims with particularity but rather, they rely on conclusory allegations to support their claims of fraud. Further, in light of Plaintiffs' inability to cure the defects in their pleadings and the lack of any indication that they could cure the deficiencies in the future, the Court concludes that any additional amendment would be futile. Accordingly, the Court DISMISSES PLAINTIFFS' FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND.[8]

IT IS SO ORDERED.

---

8. Without a cognizable claim under § 10(b), there can be no liability under § 20(a). Therefore, Plaintiffs' § 20(a) claims are also dismissed without leave to amend.