**Robert HOCKEY, on behalf of himself and all others similarly situated, Plaintiffs,**

v.

**Ajit K. MEDHEKAR, et al., Defendants.**

**No. C–96–0815 MHP.**

United States District Court,
N.D. California.

March 31, 1998.

1211

William S. Lerach, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, CA, Richard S. Schiffrin, Michael D. Craig, Schiffrin & Craig, Ltd., Bala Cynwyd, PA, Plaintiffs.

Norman J. Blears, Heller, Ehrman, White & McAuliffe, Palo Alto, CA, Gregory E. Barton, Alliance Semiconductor, San Jose, CA, for Defendants.

Kirk B. Hulett, Milberg, Weiss, Bershad, Hynes & Lerach LLP, San Diego, CA, for Intervenor–Plaintiff.

## ORDER

PATEL, Chief Judge.

Plaintiffs bring this shareholder class action against Alliance Semiconductor Corporation and various individual officers and directors (collectively "Alliance"). The complaint contains a single claim of securities fraud under section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b), and accompanying Rule 10b–5, and controlling persons allegations under section 20 of that Act, 15 U.S.C. § 78t(a). The class period runs from July 11, 1995 to December 29, 1995. The court has jurisdiction over this action pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1331.

Per an order dated April 15, 1997, this court dismissed plaintiffs' complaint without prejudice. The court ordered that, should plaintiffs choose to file an amended complaint, they were required to: 1) specify which statements were allegedly false and which were allegedly misleading due to omissions; 2) clarify which allegedly false and misleading statements were forward-looking and which were not; 3) clearly state the bases for each of their allegations; 4) if they wish to keep C.N. Reddy Investments, Inc. and N.D.R. Investments, Inc as defendants in the action, set forth the grounds for liability for each of these entities [1] and; 5) avoid gratuitous hyperbole (such as exclamation marks) and shorten the background portion

---

1. Plaintiffs have failed to set forth adequate grounds for liability of these investment companies in the FAC and do not address this issue in their brief. The only difference between the FAC and the original Complaint is an allegation that the companies were alter egos and agents of the individual defendants. As this is not sufficient to state any grounds for their liability, the court dismisses these defendants with prejudice.

of the complaint. Plaintiffs thereafter filed a First Amended Complaint ("FAC").

Now before the court are defendants' motion to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and plaintiffs' motion to strike. Having considered the parties' arguments and submissions and for the reasons stated below, the court now issues the following memorandum and order.

## BACKGROUND[2]

Alliance manufactures memory chips for personal computers and industry. The company was founded in the mid–1980's by brothers N. Damodar Reddy ("N.D.Reddy") and his brother C.N. Reddy, who are both named as individual defendants. During the class period, Alliance's main product was a 256K static random access memory ("SRAM") chip.

Alliance went public in 1993. The offering raised approximately $18.6 million for the company. During 1994 and 1995, the semiconductor industry underwent significant growth based on increased demand for various computer-related products.

In 1995, Alliance undertook a second public offering of stock, which raised a substantial amount of revenue both for the company and for the individual defendants. On July 11, 1995, the beginning of the class period, Alliance reported record first quarter 1995 results of $57 million in revenues, $14.9 million in income, and $.54 earnings per share. Alliance's strong performance was short-lived, however, and in the quarter ending December 31, 1995, the SRAM market, as well as Alliance's stock prices, plunged. Alliance reported reduced revenues and earnings per share, and warned investors that the poor results were likely to continue.

In the FAC, plaintiffs identify numerous representations by Alliance which they contend were false or misleading when made. In general, the statements may be divided into two main categories. The first group involves Alliance's allegedly false financial statements. FAC ¶¶ 83–114. The second group consists of allegedly false statements relating to Alliance's business, products and

future prospects. FAC ¶¶ 59–60, 62–63, 65, 67–72, 75–76, 22–47, 83–105.

## LEGAL STANDARDS

### I. Rule 12(b)(6)

A motion to dismiss will be denied unless it appears that the plaintiff can prove no set of facts which would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Fidelity Financial Corp. v. Federal Home Loan Bank of San Francisco,* 792 F.2d 1432, 1435 (9th Cir. 1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987). All material allegations in the complaint will be taken a true and construed in the light most favorable to the plaintiff. *NL Industries, Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. *Durning v. First Boston Corp.,* 815 F.2d 1265, 1267 (9th Cir.), *cert. denied* sub. nom. *Wyoming Community Dev. Auth. v. Durning,* 484 U.S. 944, 108 S.Ct. 330, 98 L.Ed.2d 358 (1987). The court may also consider documents incorporated by reference, *Kramer v. Time Warner, Inc.,* 937 F.2d 767, 773 (2d Cir.1991); *see also Townsend v. Columbia Operations,* 667 F.2d 844, 848 (9th Cir.1982), and documents "whose contents are alleged in the complaint and whose authenticity no party questions," *Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.), *cert. denied,* 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *see also In re Stac Electronics Sec. Litig.,* 89 F.3d 1399, 1405 (9th Cir.1996).

### II. Rule 9(b)

Federal Rule of Civil Procedure 9(b) provides in pertinent part that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Rule 9(b) applies to actions brought under federal securities laws. *See e.g., In re GlenFed, Inc. Securities Litiga-*

---

**2.** Unless otherwise noted, the following facts are taken from plaintiffs' complaint. This background section is largely taken from the court's earlier order in this action.

*tion,* 42 F.3d 1541, 1545 (9th Cir.1994) (citations omitted).

In *GlenFed,* the Ninth Circuit held that "Rule 9(b) requires particularized allegations of the circumstances constituting fraud." *Id.* at 1547. Conclusory facts and neutral allegations are insufficient. *Id.* at 1548 (quoting *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir.1985)). Rather, a plaintiff must plead precisely the time, place and nature of the alleged fraudulent activities. *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987)). "In other words, the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *GlenFed,* 42 F.3d at 1548.

Furthermore, plaintiffs cannot plead "fraud by hindsight," in which later events are used to support the falsity of earlier statements. *Id.* Instead, a plaintiff must set forth not only why a given statement was false or misleading, but why it was false or misleading when made. *Id.* at 1549. This is done most directly by citing inconsistent contemporaneous statements or internal information available to defendants. *Id.*

## DISCUSSION

### PLAINTIFFS' MOTION TO STRIKE

Plaintiffs bring a motion to strike references to the SEC Form 4s filed by the individual defendants between January 1, 1994 and December 31, 1995. Plaintiffs maintain that these documents, which are not specifically mentioned in the FAC, may not be considered on a motion to dismiss as they do not meet the *Branch v. Tunnell* standard for admissibility. Defendants counter that plaintiffs have waived any objection to the use of the Form 4's because they were relied upon—without objection by the plaintiffs—by both defendants and the court in the earlier motion to dismiss.

It is true, as plaintiffs point out, that defendants did not make any reference to the Form 4s until their reply brief. It is also true, however, that the plaintiffs filed, after the reply brief, a so-called Statement of Recent Decisions, which included an 18 page brief bringing up new arguments, including one on retroactivity, not dealt with in the parties' earlier pleadings. Plaintiffs' now valiantly argue that they did not disclose the Form 4s because their Statement of Recent Decisions was filed pursuant to Civ.L.R. 7–3(e), which does not allow for the making of objections or for otherwise responding to defendants' pleadings.

This argument, however, is disingenuous in light of the aforementioned brief plaintiffs filed along with their Statement of Recent Decisions. In fact, the parties will recall that the court issued an order putting over the scheduled hearing on the motion to dismiss and allowing defendants the opportunity to respond to the "Statement" due to the new arguments raised. As the court noted in the order, the "Statement" was out of compliance both with Civ.L.R. 7–3(e) and the earlier stipulation between the parties and signed by the court, which stated that briefing on the motion to dismiss was complete "except for the submission of relevant judicial opinion decided after the motion papers were filed, which *opinions may be filed without argument in compliance with Civ.L.R. 703(e).*" (emphasis added).

In addition, plaintiffs did not address the Form 4s at the lengthy hearing on the earlier motion to dismiss. By the time of the hearing, plaintiffs had had ample opportunity to review defendants' reply brief and make the appropriate objections. As a result, the court finds that plaintiffs have waived any objections to the defendants' use of the Form 4s in conjunction with the motion to dismiss the FAC.

### DEFENDANTS' MOTION TO DISMISS

I. *Applicability of the Private Securities Litigation Reform Act of 1995*

■ In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 ("SRA"), Pub.L. No. 104–67, which amends the Securities Exchange Act of 1934, 15 U.S.C. § 78a. As they did during the first motion to dismiss, plaintiffs maintain that the SRA does not apply to this action because it involves conduct that took place before the enactment of the SRA.

Congress specifically addressed the reach of the SRA, providing that "[t]he amendments made by this title shall not affect or apply to any private action arising under title I of the Securities Exchange Act of 1934 or

title I of the Securities Act of 1933, commenced before and pending on the effective date of this Act." Pub.L. No. 104–67 § 108, 109 Stat. 737, 758 (1995).[3] The court previously found, pursuant to this applicability provision, that the SRA applied to this action.

While before plaintiffs argued only that the heightened scienter standards present in the SRA did not apply to pre-enactment conduct, they now maintain that a recent Supreme Court decision mandates that the court find that none of the SRA applies to pre-enactment conduct. The case cited by plaintiffs, however, has nothing to do with the SRA. *See Hughes Aircraft Co. v. United States*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). Instead, it deals with amendments to the False Claims Act.

In addition, and more importantly, the Hughes Aircraft court applied a presumption of non-retroactivity because Congress had made no clear statement regarding applicability in the amendments at issue. 117 S.Ct. at 1876. Here, on the other hand, there is an applicability clause in the SRA.

Because of this applicability clause, the court relied on step one of the two-part test for retroactivity announced by the Supreme Court in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Under *Landgraf*, the court must first decide "whether Congress has expressly prescribed the statute's proper reach." *Id.; United States S.E.C. v. Fehn*, 97 F.3d 1276, 1285 (9th Cir.1996), *cert. denied*, — U.S. ——, 118 S.Ct. 59, 139 L.Ed.2d 22 (1997) (stating that *Landgraf's* analysis is applicable "[w]hen a case implicates a federal civil statute enacted after the events in [the] suit.") Next, if "the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483.

In its earlier order, the court concluded that by means of the applicability provision

in the SRA, Congress had "expressly prescribed the statute's proper reach," *i.e.*, actions filed before December 22, 1995 are not covered by the SRA, while those filed after that date are.[4] *Id.* In such a situation, "there is no need to resort to judicial default rules" and the court need not move on to step two of the Landgraf analysis. *Id.; see also, Havenick v. Network Express, Inc.*, 981 F.Supp. 480, 522 (E.D.Mich.1997) (applying step one of Landgraf analysis and finding SRA wholly applicable to cases filed after December 22, 1995); *Zeid v. Kimberley*, 973 F.Supp. 910, 914–15 (N.D.Cal.1997).

Because the False Claims Act amendments at issue did not have an applicability provision, the Hughes Aircraft Court proceeded to step two of the *Landgraf* analysis, and applied the judicial default rule that there is a "presumption against retroactive legislation." 117 S.Ct. at 1876. As discussed above, this is not the case under the SRA, and thus Hughes Aircraft does not alter the court's earlier analysis. The court finds, once again, that the SRA is applicable to this action.

## II. *Pleading of the Statements*

### A. *False and Misleading Analytical Framework*

To survive defendants' motion to dismiss, plaintiffs' complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). This standard applies to both forward-looking and non-forward-looking statements.

Even before passage of the SRA, the Ninth Circuit had already established strict pleading requirements for securities actions pursuant to Federal Rule of Civil Procedure 9(b). Plaintiffs were required to explain why the statement or omission complained of was false or misleading when made. *GlenFed*, 42 F.3d at 1549. In addition, the time, place and nature of the allegedly fraudulent activi-

---

3. The effective date of the SRA was December 22, 1995.

4. The instant action was filed on March 6, 1996.

ties must have been pleaded with specificity. *Kaplan v. Rose,* 49 F.3d 1363, 1370 (9th Cir.1994), *cert. denied,* 516 U.S. 810, 116 S.Ct. 58, 133 L.Ed.2d 21 (1995) (citing *Wool v. Tandem Computers, Inc.* 818 F.2d 1433, 1439 (9th Cir.1987)).

The court stated in its earlier order that, because the Ninth Circuit already applied a heightened pleading standard in securities cases, the SRA did not change the standard for pleading false and misleading statements. Because of this, the court concluded that it could apply pre-SRA Ninth Circuit caselaw in order to determine whether plaintiffs had properly pled that the statements at issue were false and misleading.

■ Based on further review of the SRA and the applicable legislative history, the court now concludes that the SRA has somewhat altered the standard for pleading false and misleading statements. Specifically, the SRA mandates that "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1) (emphasis added). In cases of information and belief pleading, pre-SRA Ninth Circuit caselaw did require "a statement of the facts upon which the belief is formed." *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987). However, the Ninth Circuit did not specifically require a plaintiff, as the SRA does pleading, to state all facts upon which a belief is based.[5]

In addition, the legislative history confirms that the SRA makes more stringent the applicable pleading standards. Specifically, after finding that the Second Circuit employed the most stringent pleading standard of the Courts of Appeal, the Conference Committee stated that "[b]ecause [it] intends to strengthen existing pleading requirements, it does not intend to codify the Second Circuit's case law." H.R. Conf ... Rep. No. 104–369, 104th Cong., 1st Sess. 41 (1995), 1995 U.S.C.C.A.N. 679, 740.

Here, plaintiffs maintain, in one sentence and without supporting argument, that the FAC is not pleaded on information and belief, and thus that, while they are required to plead each misleading statement with particularity, they are not required to state all facts upon which their beliefs are formed. The court has reviewed the FAC and concludes that it is pleaded on information and belief. The court's conclusion is buttressed by ¶ 130 of the FAC, which states that it is based in part on "information obtained from former employees and discussions with consultants" and also states that plaintiffs "believe[ ] that after reasonable opportunity for discovery, substantial evidentiary support will likely exist for the allegations set forth at ¶¶ 13, 30, 32–35, 38, 40–46, 48–49, 62–63, 70–71, 73–74, 77–78, 83, 85–90, 92–99, 101–105 and 112." *See In re Silicon Graphics, Inc. Sec. Litig.,* 970 F.Supp. 746, 763 (1997) (concluding, on the basis of a paragraph substantially similar to FAC ¶ 130, that "[b]ecause the sources set forth ... do not provide plaintiffs with personal knowledge, the complaint must be based on information and belief.")

In addition, plaintiffs' pleadings confirm that their complaint is pleaded on information and belief. At one point in their opposition, plaintiffs maintain, contrary to the clear language of the SRA, that "information-and-belief allegations are adequate if '[e]ach alleged misstatement is identified by content, date, and the document or announcement in which it appeared,' and 'the manner in which such representations were false and misleading.'" Opp. at 8–9 (citing *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439–40 (9th Cir.1987)). As the above quote is taken from the Legal Standard portion of plaintiffs' opposition, it seems to the court that plaintiffs have conceded that the FAC is pleaded on information and belief.

For the above reasons, and because plaintiffs have made no real effort to argue that their pleading is not one based on information and belief, the court will apply the provi-

---

**5.** Because pre-SRA Ninth Circuit caselaw did require particularity and an explanation why the statement or omission complained of was false or misleading when made, *GlenFed,* 42 F.3d at 1549, such caselaw is instructive to the court's analysis. For example, plaintiffs must still plead the time, place and nature of the allegedly fraudulent activities with specificity. *Kaplan,* 49 F.3d at 1370.

sion of the SRA dealing with complaints pleaded on information and belief. In addition, the court finds that the SRA imposes more stringent pleading standards for false and misleading statements than did pre-SRA Ninth Circuit caselaw.

### 1. False Financial Statements

#### a. Revenue and Reserve Allegations

Plaintiffs' financial statement allegations involve alleged accounting fraud on the part of defendants. To begin with, plaintiffs allege that Alliance violated Generally Accepted Accounting Principles ("GAAP") and SEC rules by inflating its revenues and overstating its reserves.

Specifically, plaintiffs maintain that Alliance inflated its revenues in the first two quarters of F96 by booking certain contingent transactions as sales. FAC ¶¶ 86–91. Plaintiffs contend that Alliance granted both its distributors and customers the right to return unsold products, but only disclosed that distributors were permitted to return a portion of the purchased products. FAC ¶ 87. In addition, according to plaintiffs, Alliance deliberately shipped large amounts of product to its distributor and manufacturer customers in order to inflate its reported revenues. FAC ¶ 90. Finally, plaintiffs maintain that Alliance failed to increase the reserves it took against product returns and instead retained a reserve level that it knew was inadequate. FAC ¶ 89.

■ Properly pled, overstating of revenues may state a claim for securities fraud, as under GAAP, "revenue must be *earned* before it can be recognized." *Provenz v. Miller,* 102 F.3d 1478, 1484 (9th Cir.1996), *cert. denied,* —— U.S. ——, 118 S.Ct. 48, 139 L.Ed.2d 14 (1997) (emphasis in original); *see also, In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1418 (9th Cir.1994), *cert. denied,* 516 U.S. 868, 116 S.Ct. 185, 133 L.Ed.2d 123 (1995) (holding that revenue overstatement by reporting consignment transactions as sales is materially false and misleading). To properly state a claim for accounting fraud, plaintiffs must "plead facts sufficient to support a conclusion that [d]efendant [ ] prepared the fraudulent financial statements and that the alleged financial fraud was material." *In re Oak Technology Securities*

*Litig.,* 1997 WL 448168, *8. In addition, plaintiffs "must identify the particular transactions underlying [the] alleged accounting deficiencies." *Id.* (citing *In re Wells Fargo Sec. Litig.,* 12 F.3d 922, 926–27 (9th Cir. 1993), *cert. denied,* 513 U.S. 917, 115 S.Ct. 295, 130 L.Ed.2d 209 (1994)).

■ Here, plaintiffs have failed to meet the applicable pleading requirements. Instead, plaintiffs' fraud allegations—although included in an extremely verbose complaint—are conclusory. For example, plaintiffs plead no factual support for their allegations that Alliance's customers had a right to return product. FAC ¶ 87. In addition, after alleging that Alliance's customers returned $14 million worth of 256K SRAM chips, FAC ¶ 91, plaintiffs fail to state with particularity why this fact might be actionable. There is no identification of which customers returned chips and indeed, no allegation that these chips were returned pursuant to a non-disclosed right of return. *See, e.g., Leonard v. NetFRAME Systems, Inc.,* 1995 WL 798923, *3 (N.D.Cal.1995) (holding that plaintiff had not properly pled a claim for fraud based on nondisclosed right of return where plaintiff neither "pled the existence of contemporary internal reports or receipts which in fact provided a right of return" or identified the time or date of any right of return transactions.)

Finally, there are no specific allegations regarding the allegedly unincreased reserves. As defendants point out, this is essential to plaintiffs' claim of securities fraud. If the reserves set by defendants were higher than the product returns made, failure to increase the reserves would not have adversely affected net earnings or revenue and thus there could be no actual injury to investors.

Plaintiffs argue that under recent Ninth Circuit caselaw, they have properly pled their inflated revenue claims. Specifically, plaintiffs maintain that under *Cooper v. Pickett,* 122 F.3d 1186 (9th Cir.1997), as amended 1998 WL 32678 (1998), the complaint adequately pleads a securities fraud cause of action based on false financial statements. In *Cooper,* the Ninth Circuit reversed the district court's dismissal with prejudice of the plaintiffs' complaint, holding that plaintiffs

had met their pleading burdens under *Glen-Fed.* *Cooper*, 1998 WL 32678 *11–13. Plaintiffs here maintain that their complaint is comparable to that at issue in *Cooper* and thus sufficient to withstand defendant's motion to dismiss.

The court disagrees. *Cooper*, although recently decided, did not deal with the pleading requirements under the SRA as the complaint at issue was filed on August 15, 1994. 1998 WL 32678, *2. Thus, it did not consider the heightened pleading standards incorporated into the SRA, such as the requirement that a complaint pleaded on information and belief disclose all facts underlying the beliefs. In addition, the court respectfully notes that Cooper, while not purporting to overrule existing law, appears to conflict with earlier Ninth Circuit securities cases that required greater particularity in the pleading of fraud claims. *See, e.g., GlenFed*, 42 F.3d at 1549; *In re Stac*, 89 F.3d at 1405; *Wool*, 818 F.2d at 1439. The court will not parse these conflicts, however, since they arise in pre-SRA cases.

Thus, the court finds that plaintiffs have failed to adequately and specifically allege why the statements involving revenues and reserves in Alliance's financial statements were false when made. As a result, these claims must be dismissed.

b. *Failure to Disclose Non–Cancelable Purchase Commitments*

■ Plaintiffs also maintain that Alliance falsified its financial statements by failing to disclose non-cancelable purchase commitments. Specifically, plaintiffs allege that plaintiffs failed to take a charge against inventory in its Form 10–Qs with respect to product that was the subject of purchase commitments. FAC ¶¶ 96–97, 100. In addition, plaintiffs claim that Alliance failed to disclose purchase commitments with a remaining term of less than a year—so-called "shorter-term" purchase commitments.

FAC ¶¶ 101. Plaintiffs maintain that such disclosure was required under both GAAP and the applicable securities laws.

The court finds that plaintiffs have failed to adequately plead these "secret" purchase commitments. Although plaintiffs engage in unnecessary emphasis by underlying certain portions of these allegations,[6] the allegations do not reach the level of specificity and particularity required by the SRA, Rule 9(b) or even pre-SRA Ninth Circuit caselaw. *See, e.g., GlenFed*, 42 F.3d at 1548–49.

It is undisputed that Alliance did state in its Form 10–Qs that it had noncancelable purchase commitments of considerable amounts. Def.Ex. 8 at 7 ($20.4 million); Def. Ex. 9 at 7 ($27.6 million).[7] Plaintiffs, however, have failed to plead facts showing that any noncancelable purchase agreements were not included in the Form 10–Q disclosures. Although they do allege that Alliance had these alleged nondisclosed agreements with "foundries," they do not, for example, name these foundries, state what the noncancellable commitments were related to, state whether Alliance actually followed through with the alleged agreements or point to any other evidence that these agreements existed. In addition, plaintiffs do not, as is required under the SRA for information and belief pleading, state the facts underlying their beliefs that there were nondisclosed noncancelable purchase agreements.

Furthermore, they have absolutely no evidence or underlying facts supporting their claim that Alliance had not reported "at least 20 million of undisclosed shorter term commitments." FAC ¶ 102. Plaintiffs do not state, for example, if there was one purchase agreement of $20 million or several agreements adding up to that amount. As plaintiffs must, under the SRA, both point to the alleged false or misleading representation and explain the circumstances constituting

---

6. For example, paragraph 96 state that "Due to product shortages in the SRAM market in 1994 and early 1995, *Alliance entered into irrevocable purchase commitments with foundries to increase the availability of SRAM chips.* These purchase commitments, while necessary for Alliance to obtain the future amounts of inventory it desired, *exposed Alliance to an enormous risk if prices or demand for SRAM chips declined,* especially since

Alliance *also granted its distributors and OEM customers the right to return product to it,* this exposing Alliance to a vicious whipsaw effect if SRAM prices declined."

7. While these documents were not attached to the FAC, the FAC refers to them and thus they are properly before the court on this motion to dismiss. *See, e.g., Branch*, 14 F.3d at 454.

why the representation was false when made, such conclusory pleading cannot survive defendants' motion to dismiss.

In addition, there is another fatal problem with plaintiffs' allegations regarding failure to report noncancellable short-term obligations. As plaintiffs cannot dispute, there can be no claim for securities fraud based on failure to disclose if the defendants were under no duty to disclose the information in question. Plaintiffs maintain that the GAAP accounting rule violated in this case was Financial Accounting Standards ("FAS") No. 47. FAC ¶ 102. FAS No. 47, however, deals only with disclosure of long-term obligations, specifically those with remaining terms in excess of one year. Def.Ex. 15 at 4209, 4213–14. As plaintiffs point to a rule under which defendants had no obligation to disclose short-term obligations, they can not state a claim for securities fraud based on defendants' failure to disclose those alleged obligations.

▬ The court does find, however, that plaintiffs have properly alleged that Alliance violated GAAP as to the noncancelable purchase commitments it did disclose in its Form 10–Qs. FAC ¶ 102. Pursuant to FAS No. 47, in conjunction with disclosing its long-term obligations, a company must include:

a. The nature and terms of the obligations(s)

b. The amount of the fixed and determinable portion of the obligation(s) as of the date of the latest balance sheet presented in the aggregate and, if determinable, for each of the five succeeding fiscal years (paragraph 8)

c. The nature of any variable components of the obligation(s)

d. The amounts purchased under the obligation(s) (for example, the take-or-pay throughput contract) for each period for which an income period is presented

Def.Ex. 15 at 4214. This information was not included in the Form 10–Qs. Thus, plaintiffs have properly pled that defendants omitted required information from the Form 10–Qs.

8. The court reiterates that this finding goes *only* to the noncancelable purchase options that were

Although they filed a 40–page brief, defendants only address this allegation of plaintiffs in a cursory footnote. The footnote is not artfully worded, but defendants seem to be arguing that even if they did fail to include the material required by GAAP, the omission is not misleading.

The Ninth Circuit has concluded that a securities plaintiff must establish that any false or misleading statements or omissions are material. *Provenz*, 102 F.3d at 1489. "Materiality is established by showing that a reasonable shareholder would consider the misrepresentation or omission important, because it altered the total mix of available information." *Id.* (internal quotations and citations omitted). "Whether an omission is 'material' is a determination that requires delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of facts." *Id.* (internal quotations and citations omitted).

Given the standard laid out in Provenz, the court cannot, at this stage of the litigation, find that the omissions from the Form 10–Qs were not material as a matter of law. Plaintiffs maintain that the required disclosures alert investors to the risks associated with investing in a particular company. As they only address this allegation in a footnote, defendants have not shown the court that these omissions were non-material as a matter of law. Thus, the court concludes that plaintiffs have properly pled that the failure to comply with FAS No. 47 was false or misleading when made.[8]

**2. *Statements Relating to Alliance's Business, Products and Future Prospects***

Plaintiffs also maintain that defendants artificially inflated Alliance stock through a combination of overstated financial results, misstatements regarding the current strength of Alliance's business and false forecasts of continued growth.

disclosed in the Form 10–Qs and not those that plaintiffs allege were deliberately omitted.

#### a. *Statements from July 11, 1995*

Plaintiffs maintain that on July 11, 1995, Alliance falsely represented that there was continued strong market demand for its SRAM products, that demand for 3.3 SRAMs continued to increase, and that supply constraints had created a favorable pricing environment. FAC ¶ 59. Alliance also allegedly told analysts and investors during a conference call that the SRAM market was very strong and that Alliance was deluged with orders. FAC ¶ 60. In addition, Alliance allegedly falsely stated that it was not encountering product problems with its 1 Mbit products and forecasting high revenues and stock prices. FAC ¶ 60.

To begin with, the court notes that these allegations are essentially identical to those rejected by the court in its earlier order. Compare FAC ¶¶ 59–60 with Comp. ¶¶ 42.43. Plaintiffs argue that they have detailed the adverse internal conditions that made these statements false, FAC ¶¶ 62–63, and the facts known to defendants that contradicted the positive statements. FAC ¶¶ 22–47. Upon close review of the FAC, however, the court concludes that plaintiffs' support for their allegations is little more than that already rejected by the court and certainly not near the specificity level required by the SRA.

For example, FAC ¶ 63, which allegedly explains why the statements were false when made, again relies on a contention that adverse facts were known to the defendants due to their access to internal corporate data. While internal corporate reports may be evidence of why a statement was false or misleading when made, *GlenFed*, 42 F.3d at 1549, plaintiffs must, at the very least, plead facts that reveal that such documents existed, especially when, as here, plaintiffs allege that defendants knew the statements were false and misleading due to their access to internal corporate data.

As plaintiffs' argument is the same, the court reiterates what it stated in its earlier order. Mere citation by plaintiffs to inconsistent "internal forecasts" is insufficient to meet the Rule 9(b) standard. *Stack v. Lobo,* 903 F.Supp. 1361, 1370 (N.D.Cal.1995); *see also, In re Syntex Corp. Securities Litig.,* 855 F.Supp. 1086, 1095 (1994), affirmed, 95 F.3d 922 (9th Cir.1996) (concluding that "[p]laintiffs' allegation that Defendants possessed 'internal corporate data known only to them' comes nowhere close to satisfying Fed. R.Civ.P. 9(b).") [9]

In *Stack,* for example, the court had earlier dismissed plaintiffs' complaint, which relied in part on citations to internal data to show that certain statements were false and misleading when made, "because they failed to cite the dates or preparers of any internal forecasts." *Id.* The plaintiffs then amended their complaint, adding a paragraph describing how the defendant regularly prepared annual internal business plans and projections. *Id.* Once again, despite this additional information, the court dismissed the claims based on internal corporate data, finding that they were still insufficient under Rule 9(b).

Fatal to the claims of the Stack plaintiffs was their failure "to refer to any *particular* forecasts and explain how they differed from [defendant's] actual results." *Id.* (emphasis added). The same is true here. Plaintiffs do discuss the internal documents in somewhat more detail in the FAC than they did in the original complaint. For example, they state that the reports were prepared by managers and were received from Alliance's subsidiary. FAC ¶¶ 43, 38. In addition, they state that the reports showed price-cutting of 256K SRAM chips and Alliance's excessive 256K SRAM inventory and purchase commitments. FAC ¶ 46. Plaintiffs do not, however, attempt to show when these documents were created, by whom they were drafted, or even whether Alliance regularly prepared such documents. Clearly, such vague allegations " 'are no substitute for the particularity required by Fed.R.Civ.P. 9(b).' " *Id.* (quoting *In re Syntex,* 855 F.Supp. at 1097 (N.D.Cal. 1994)); *see also Silicon Graphics,* 970 F.Supp. at 767 (requiring "titles of the reports, when they were prepared, who pre-

---

**9.** Other circuits have also held that general allusions to unspecified internal corporate data are insufficient to withstand a motion to dismiss. *See, e.g., San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801, 812 (2d Cir.1996); *Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 365 (1st Cir. 1994); *Arazie v. Mullane,* 2 F.3d 1456, 1467 (7th Cir.1993).

pared them, to whom they were directed, their content, and the sources from which plaintiffs obtain this information.")

In addition, the contradictory facts allegedly known to defendants do not save plaintiffs' claims. FAC ¶¶ 27–47. While lengthy, some of it appears to be background. *See, e.g.,* FAC ¶ 27. Of the remainder, some of it relies on the again unidentified internal corporate date, *see, e.g.,* FAC ¶¶ 38, 43, while the rest consists of conclusory allegations without factual or evidentiary support and certainly without the statements of facts underlying the beliefs which is required by the SRA.

■ Plaintiffs have made an allegation regarding the 1 Mbit SRAM production that was not in the original complaint. Specifically, plaintiffs allege that on July 11, 1995, N.D. Reddy and Shelton told analysts and others that "Alliance was ramping up its 1 Mbit production for high-end PCS and was not encountering any production or quality problems in reaching volume production." FAC ¶ 60. In fact, according to plaintiffs, Alliance was already having serious problems regarding production of the 1 Mbit chips due to wafer contamination problems at its Taiwanese foundry, and did not actually produce the projected number of chips. FAC ¶ 8. In December 1995, Alliance revealed to the public that it would suffer a revenue decline and earnings shortfall due in part to wafer contamination of 1 Mbit chips at Alliance's Taiwanese foundry. FAC ¶ 8.

Defendants respond that plaintiffs have failed to meet their pleading burden because they have simply alleged, without any factual or evidentiary support, that defendants knew at the time of the July statements that there were problems with the manufacturing of the 1 Mbit chips. While it is true that plaintiffs do not, for example, cite to a document revealing that defendants were actually aware of any wafer contamination problems, plaintiffs do cite to Alliance's March 1995 Prospectus, which states that Alliance has an "on-line information system and process in place for monitoring of its work-in-process inventory ... including its foundry source." FAC ¶ 39. The Prospectus went on to state that:

The Company's on-line information system enables it to track individual lots, consisting of approximately 25 wafers each, and to monitor over 200 performance characteristics during the manufacturing process in a timely manner. This allows the Company to maximize yields, evaluate foundry performance, diagnose potential problems in the manufacturing process, and monitor and improve manufacturing quality.

FAC ¶ 39.

Although defendants fail to address the significance of this portion of the FAC, it seems to the court that by touting this on-line information system, Alliance was basically representing that it became aware of problems in its foundries as soon as or soon after they occurred. This is evidence that defendants were aware of the wafer contamination problems with the 1 Mbit chips before actually revealing the problems in December 1995. Thus, the court finds that plaintiffs have properly pled that statements relating to 1 Mbit SRAM production were false and misleading when made.

b. *Statements Made in August and September 1995*

■ Plaintiffs maintain that in August 1995 and September 1995, C.N. Reddy, N.D. Reddy, and Shelton told analysts that demand for product remained strong, that Alliance had minimal exposure to SRAM price drops, that Alliance was successfully transitioning to 1 Mbit SRAM chips, and that the new 1 Mbit chip was receiving excellent customer response and strong orders. FAC ¶ 65. This allegation is similar to that already dismissed by the court in its earlier order. Compl. ¶¶ 45, 47. Although the allegations here are more specific than those contained in the original complaint, plaintiffs have again failed to adequately and specifically plead facts showing that the statements regarding the transition were false when made, and do not state the facts underlying their beliefs.

■ Plaintiffs do add an allegation that the individual defendants told an analyst from Lehman Brothers that its future as a supplier to Intel was promising. FAC ¶ 65. While plaintiffs contend in ¶ 65 that Intel

was, in actuality, no longer a major customer, they later maintain that Intel remained Alliance's largest customer as of December 1995. FAC ¶ 77. As plaintiffs contradict themselves regarding the very fact that they maintain reveals that Intel statement was false and misleading, the court finds that this allegation must be dismissed. In addition, although it is true that "projections and general statements of optimism may trigger liability under federal securities laws," *In re Syntex*, 855 F.Supp. at 1096, the court finds that this optimistic statement regarding a future "promising" relationship is not actionable as it is "so vague or amorphous that no reasonable investor could rely on [it]." *Id.*

### c. Statements Made on October 10, 1995

Alliance released its September 30, 1995 quarterly results on October 10, 1995. According to plaintiffs, this report overstated net income due to improper revenue recognition, inventory misstatements, and purchase commitment misstatements. FAC ¶¶ 83–105. As the court has already concluded, *supra*, these allegations based on allegedly false financial statements must be dismissed.

The 10/10/95 announcement also stated that Alliance was experiencing strong growth and high product demand. FAC ¶ 67. On this same date, N.D. Reddy and Shelton allegedly told analysts and investors that Alliance was experiencing high demand, that it was successfully transitioning its product mix, and that prices were high. They also allegedly stated that price declines would have a minimal impact on Alliance as Alliance's high speed SRAMs were not commodity products. FAC ¶¶ 67–69.

For the reasons discussed *supra*, plaintiffs' allegations regarding demand and product transitioning must be dismissed.[10] In addition, the court finds that plaintiffs' allegations regarding defendants' characterizations of Alliance's SRAM products as non-commodities must also be dismissed. Plaintiffs allege that the Alliance chips actually were "commodity-type", as opposed to "fast" and thus did suffer from oversupply and price erosion FAC ¶ 6. Although plaintiffs argue that FAC ¶¶ 70–71 demonstrate why the al-

leged commodity statements were false when made, nowhere in either of those paragraphs is there any reference to commodities or to why statements characterizing Alliance's products as non-commodities were false and misleading when made.

### B  Scienter

Plaintiffs have failed to properly plead that the majority of the statements or omissions discussed in the FAC were false or misleading when made. Thus, the court need not move on to an analysis of whether plaintiffs have adequately pled scienter as to those statements.

The court did conclude, however, that plaintiffs have adequately pled a violation of GAAP in terms of the defendants' failure to comply with FAS No. 47, and have adequately pled that the defendants, statement that they were not having any production or quality problems in relation to their 1 Mbit SRAM chip was false or misleading when made. FAC ¶ 60. Therefore, the court will now consider whether the defendants have adequately pled scienter as to that claim.

### 1. Analytical Framework

Under the SRA, plaintiffs are required to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." SRA § 21D(b)(2). The required state of mind is based on the type of statement allegedly made by the defendant. For example, if the allegedly false or misleading statement is forward-looking, a plaintiff must be able to prove that the defendant had actual knowledge that the statement was false or misleading when made. 15 U.S.C. § 78u–5(c)(1)(b). A forward-looking statement is defined as:

(A) a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share capital expenditures, dividends, capital structure, or other financial items;

(B) a statement of the plans and objectives of management for future operations in-

---

10. Particularly useless are supposedly supporting statements such as the following "Demand for Alliance's 256 SRAM products was not "strong" as Alliance stated but was, in fact, weak." FAC ¶ 70.

cluding plans or objectives relating to the products or services of the issuer;

(C) a statement of future economic performance, including any such statement contained in a discussion and analysis of financial condition by the management or in the results of operations included pursuant to the rules and regulations of the Commission;

(D) any statement of the assumptions underlying or relating to any statement described in subparagraph (A), (B), or (C);

(E) any report issued by an outside reviewer retained by an issuer, to the extent that the report assesses a forward-looking statement made by the issuer; or

(F) a statement containing a projection or estimate of such other items as may be specified by rule or regulation of the Commission.

15 U.S.C. § 78u–5(i)(1).

If a statement is *not* forward-looking, plaintiffs must plead facts giving rise to a strong inference of recklessness, either by demonstrating that the defendants had the motive and opportunity to commit fraud or by alleging specific facts constituting circumstantial evidence of conscious behavior or recklessness. *Zeid,* 973 F.Supp. 910, 923.

The standard for non-forward-looking statements is based on the requirements for pleading scienter in the Second Circuit prior to the passage of the SRA. *See, e.g., Shields v. Citytrust Bancorp. Inc.,* 25 F.3d 1124, 1130 (2d Cir.1994); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 50 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Although the Ninth Circuit has yet to consider the pleading standards embodied in the SRA, district courts in this Circuit have largely concluded that the Second Circuit approach is appropriate in cases of non-forward looking statements. *See, e.g., Zeid,* 973 F.Supp. 910, 923; *Marksman Partners v. Chantal Pharm. Corp.,* 927 F.Supp. 1297, 1309 n. 9, 1310 (C.D.Cal.1996).

There has, however, been one notable exception. In *Silicon Graphics,* 970 F.Supp. at 756–57, Judge Smith held that, in the case of non-forward-looking statements, plaintiffs were required to plead facts creating a strong inference of knowing or intentional

misconduct, including deliberate recklessness.[11] The *Silicon Graphics* court went on to state that while "[m]otive, opportunity, and non-deliberate recklessness may provide some evidence of intentional wrongdoing [they were] not alone sufficient to support scienter unless the totality of the evidence creates a *strong inference of fraud.*" *Id.* at 757.

The court based this conclusion on the legislative history of the act, which it concluded demonstrated that Congress wished to establish a stricter pleading standard than that in the Second Circuit, and, correspondingly, eliminated motive, opportunity, and subjective recklessness as means, without more, of establishing scienter. *Id.* The Conference Committee did state that because it intended to strengthen existing pleading requirements, it did "not intend to codify the Second Circuit's case law." `1995 U.S.C.C.A.N. at 740. It went on to say that it "chose not to include in the pleading standard [of the SRA] certain language relating to motive, opportunity, or recklessness." *Id.* at 747.

The Conference Committee did confirm, however, that the "strong inference" pleading standard was based in part on the Second Circuit approach to securities litigation. *Id.* at 740. In addition, the legislative history also states that:

> The Committee does not adopt a new and untested pleading standard that would generate additional legislation. Instead, the Committee chose a uniform standard modeled upon the pleading standard of the Second Circuit. Regarded as the most stringent pleading standard, the Second Circuit requires that the plaintiff plead facts that give rise to a "strong inference" of defendant's fraudulent intent. The Committee does not intend to codify the Second Circuit's caselaw interpreting this pleading standard, although courts may find this body of law instructive.

*Id.* at 694.

Given this provision, and the fact that the SRA and its legislative history do not specifically reject the motive, opportunity and reck-

---

**11.** This case is currently on appeal to the Ninth Circuit.

lessness tests, this court finds that the more prudent approach is to utilize the caselaw of the Second Circuit in analyzing the pleading of scienter. Thus, the court does not adopt the more stringent test developed in Silicon Graphics.

### 2. *Failure to Follow GAAP*

As the court stated above, plaintiffs have properly pled that defendants omitted material information regarding their noncancelable purchase commitments, in violation of FAS No. 47. Thus, the court must now consider whether plaintiffs have properly pled scienter in relation to this omission.

To begin with, the court finds that these omissions regarding the nature and terms of the noncancelable purchase agreements were not forward-looking statements or assumptions underlying forward-looking statements. Therefore, plaintiffs must demonstrate either that the defendants had the motive and opportunity to commit fraud or allege specific facts constituting circumstantial evidence of conscious behavior or recklessness. *Zeid,* 973 F.Supp. 910, 923.

### a. *Motive and Opportunity*

Plaintiffs first allege that defendants had both motive and opportunity. To begin with, the court finds that plaintiffs have shown that defendants did have the opportunity to commit fraud. Opportunity has been defined as "the means and likely prospect of achieving concrete benefits by the means alleged." *Shields,* 25 F.3d at 1130. As officers and representatives of Alliance, the individual defendants had the ability to make representations to analysts and investors. Thus, opportunity is clear. *See Marksman,* 927 F.Supp. at 1312.

Plaintiffs fail, however, to establish motive. As they did before, plaintiffs argue that defendants' motive was to keep the stock price of Alliance high so that they could sell their stock and make a substantial profit. In support of this argument, plaintiffs point to the insider trading of the individual defendants, which took place shortly before Alliance's stock price fell. FAC ¶¶ 110–114.

The Ninth Circuit has held that only insider trading "in suspicious amounts or at suspicious times is probative of bad faith and scienter." *In re Apple Computer Securities Litig.,* 886 F.2d 1109, 1117 (9th Cir.1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990); *see also, Marksman,* 927 F.Supp. at 1312 (adopting same standard in post-SRA case considering non-forward-looking statements).

The trading here does not raise a strong inference of scienter. To begin with, as the court found in its earlier order, most of the insider sales occurred before the allegedly false or misleading statements were made. Obviously, these sales cannot serve as motivation for later statements and thus did not occur at suspicious times. *See Apple,* 886 F.2d at 1117. In addition, plaintiffs have not met their burden of showing that the trading was in suspicious amounts, *i.e.* in " 'amounts dramatically out of line with prior trading practices.' " *Marksman,* 927 F.Supp. at 1312 (citations omitted). In fact, as already established in the earlier order, defendants sold more shares before the class period than they did during the class period and sold only a small percentage of their collective holdings. Given this, plaintiffs have not properly pled motive based on evidence of insider trading.

### b. *Circumstantial Evidence of Conscious Behavior or Recklessness*

Plaintiffs also maintain that they have properly pled scienter under the second approach adopted by the Second Circuit. The Second Circuit has held that "[w]here motive is not apparent, it is still possible to plead scienter by identifying circumstances indicating conscious behavior by the defendant, ... though the strength of the circumstantial allegations must be correspondingly greater." *Beck,* 820 F.2d at 50 (citations omitted). Recklessness is defined as conduct "involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers and sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Hollinger v. Titan Corp.,* 914 F.2d 1564, 1569 (9th Cir. 1990), *cert. denied,* 499 U.S. 976, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991).

■ A failure to follow GAAP, without more, is insufficient to establish the requisite scienter. *Worlds of Wonder,* 35 F.3d at 1426; *Marksman,* 927 F.Supp. at 1313 (stating same in post-SRA case). In addition, even a deliberate violation of GAAP, without more, does not amount to fraud. *Worlds of Wonder,* 35 F.3d at 1426.

■ Plaintiffs' arguments regarding scienter are not specifically related to defendants' failure to follow FAS No. 47. Rather, they basically maintain that, through their allegations of serious financial fraud on the part of leading corporate executives at Alliance and their contentions that those same executives knew that Alliance was facing serious problems, they have adequately pled scienter for all of the allegedly false and misleading statements. FAC ¶¶ 32–44.

The court finds that plaintiffs' complaint does not adequately demonstrate circumstantial evidence that defendants consciously of recklessly failed to comply with FAS No. 47. Defendants did disclose in their Form 10-Qs that they had certain noncancelable purchase commitments. Such nondisclosure may well have been negligent, but that is not enough to establish scienter under the SRA or pre-Ninth Circuit caselaw such as Worlds of Wonder. It is certainly not "an extreme departure from the standards of ordinary care." *Hollinger,* 914 F.2d at 1569. In fact, as disclosure of the noncancelable commitments alerted investors to Alliance's financial obligations and the consonant risks of investing with the company, it is difficult to ascertain why defendants would purposefully choose to conceal the nature and terms of those commitments. Thus, the court finds that these claims must be dismissed.

### 3. Statements Relating to 1 Mbit SRAM Production

In addition, plaintiffs have properly pled that defendants' statement that they were not having any production or quality problems in relation to their 1 Mbit SRAM was false or misleading when made. FAC ¶ 60. The court finds that this statement was not a forward-looking statement or an assumption underlying forward-looking statements. Therefore, as with their allegations that defendants failed to follow GAAP, plaintiffs must demonstrate either that the defendants

had the motive and opportunity to commit fraud or allege specific facts constituting circumstantial evidence of conscious behavior or recklessness. *Zeid,* 973 F.Supp. 910, 923.

#### a. Motive and Opportunity

As before, the court finds that plaintiffs have established that defendants had the opportunity to commit fraud. As officers and representatives of Alliance, the individual defendants had the ability to make representations to analysts and investors, and therefore the "means and likely prospect of achieving concrete benefits by the means alleged." *Shields,* 25 F.3d at 1130.

As before, however, the court also finds that plaintiffs have failed to establish motive. *See supra.* Plaintiffs point to the insider trading of individual defendants as support for their motive argument. The court has already concluded that plaintiffs have not met their burden of showing that the trading was in suspicious amounts, *i.e.* in " 'amounts dramatically out of line with prior trading practices.' " *Marksman,* 927 F.Supp. at 1312. Thus, plaintiffs have not properly pled motive based on evidence of insider trading.

#### b. Circumstantial Evidence of Conscious Behavior or Recklessness

The court does find, however, that plaintiffs have properly pled scienter under the second approach adopted by the Second Circuit. In December 1995, Alliance revealed that it would suffer a revenue decline and earning shortfall due in part to wafer contamination of the 1 Mbit chips at its Taiwanese factory. In its March 1995 Prospectus, however, Alliance represented that it had an "on-line information system and process in place for monitoring of its work-in-process inventory . . . including its foundry source." FAC ¶ 39. Through this Prospectus, Alliance represented to the public that it became aware of problems in its foundries as soon as or soon after they occurred.

On or around July 11, 1995, N.D. Reddy and Shelton told analysts and others that Alliance was not encountering any problems in relation to production of the 1 Mbit SRAM chip. Alliance did not reveal until December 1995 that it was having problems with the

chip. With the announcement of its on-line reporting system, Alliance made clear to the public that it became quickly aware of foundry problems. As this is evidence that they were aware of the problem before informing the public, plaintiffs have properly pled reckless conduct "which presents a danger of misleading buyers and sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Hollinger*, 914 F.2d at 1569; *see also, Beck*, 820 F.2d at 50. Thus, having met the requirements for pleading scienter, plaintiffs' allegations regarding the 1 Mbit SRAM chip survives defendants' motion to dismiss.

*CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs are not given leave to amend their complaint.

Given that defendants do not object, plaintiffs' motion to intervene is GRANTED. Intervening plaintiffs are bound by the briefing on the motion to dismiss already submitted to the court and are bound by this court's ruling.

This order fully adjudicates or renders moot the motions reflected at Docket # 69-1, 78-1 and 79-1. The Clerk of the Court shall remove them from the pending motions list.

The other pending motions are plaintiffs' motion for class certification and a motion to be appointed lead plaintiff (Docketè44-1 and 15-1). As the court declined to consider these motion until after resolution of the motion to dismiss, these motions are not yet fully briefed. The Clerk of the Court is hereby ordered to remove them from the pending motions list.

Plaintiffs should re-notice these motions with the court's deputy and set a briefing schedule. Once the oppositions and replies are filed, the Clerk of the Court shall deem the motions as re-filed.

IT IS SO ORDERED.